THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON LAND DEVELOPMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LLOYDS TSB BANK, PLC,<br><br>Defendant. | CASE NO. C14-0179-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 26). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.  **BACKGROUND**

Plaintiff Washington Land Development LLC ("Washington Land Development") is a limited liability company organized under the laws of the State of Washington. (Dkt. No. 1, Ex. A ¶ 8.) Defendant Lloyds Bank plc ("Lloyds Bank") is a bank organized under the laws of the United Kingdom. (Dkt. No. 26 at 7.)

Lloyds Bank introduced International Mortgage System ("IMS") loans in 1985 and offered them to American citizens living abroad and to individuals in Washington and other states. (Dkt. No. 1, Ex. A ¶ 3.) In 2009, Plaintiff entered into two such loans, which were secured

by real property in Bellevue, Washington. (Dkt. No. 1, Ex. A ¶ 4.) A number of documents evidenced the loans ("the Loan Documents"), including the Facility Agreements. (*Id.*)

The Loan Documents define the relevant interest rate as 1.5% per annum above Lloyds Bank's Cost of Funds. (*Id.* ¶ 5, Dkt. No. 26 at 7.) The Cost of Funds is defined as "the cost (calculated to include the costs of complying with liquidity and reserve assets requirements) in respect of any currency expressed as a percentage rate of funding for maintaining the advance or advances in that currency as conclusively nominated by the Lender from time to time."[1] (Dkt. No. 1, Ex. A ¶ 5; Dkt. No. 26 at 7–8.) The Facility Agreements also include a choice-of-law provision, which states, "This Facility is made in Hong Kong and the laws of Hong Kong shall govern this transaction." (Dkt. No. 27 at 12, 23.)

Plaintiff alleges that from 1985 until 2009 Lloyds Bank used one method for calculating the Cost of Funds, but that it changed that method in 2009 to account for a liquidity transfer pricing ("LTP") charge imposed by the parent company of Lloyds Bank—Lloyds Banking Group plc ("Lloyds' Parent"). (Dkt. No. 1, Ex. A ¶ 7.) The primary issue in this case is whether this LTP charge is appropriately considered part of Lloyds Bank's Cost of Funds as defined in the Loan Documents. (Dkt. No. 26 at 7–9; Dkt. No. 30 at 2–3.)

Plaintiff filed this putative class action in Washington state court on January 22, 2014, on behalf of Washington individuals who entered into loan agreements with Lloyds Bank containing a variable interest rate based upon the Cost of Funds. (Dkt. No. 1, Ex. A ¶ 28.) The Complaint alleged breach of contract (Dkt. No. 1, Ex. A at 14), breach of the implied covenant of good faith and fair dealing (*id.* at 15), and violations of Washington's Consumer Protection Act ("CPA") (*id.*). Defendant removed to federal court on February 5, 2014, and now moves to dismiss. (Dkt. Nos. 1, 26.)

//

---

[1] The precise definition varied slightly among the Loan Documents, but neither party suggests that the differences were material. (Dkt. No. 1, Ex. A ¶ 5.)

ORDER
PAGE - 2

## II. DISCUSSION

### A. Pleading Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court takes all material allegations of fact as true. Detailed allegations are unnecessary, but a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's claims must be facially plausible, which does not require that they are "probable" but requires more than a naked possibility of entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

Allegations of fraud or mistake require that a plaintiff meet a higher pleading standard. *See* Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," *id.*, which generally requires describing "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp., USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).

### B. Choice of Law

In a diversity case, a federal court applies the forum state's choice-of-law rules. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). Under Washington law, "there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997). In the absence of such a conflict, the presumptive local law applies. *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007).

The choice-of-law analysis depends on the particular issue being addressed. *See Specialty Surplus Ins. Co. v. Second Chance, Inc.*, No. 03-0927-JCC, 2006 WL 581024 at *1 (W.D. Wash. 2006) (citing *Fluke Corp. v. Hartford Accident & Indem. Co.*, 34 P.3d 809, 815 (Wash. 2001)).

ORDER
PAGE - 3

Because neither party contends that Hong Kong and Washington law differ as to the breach-of-contract claim, the Court applies Washington law in considering this claim. (Dkt. No. 30 at 8; Dkt. No. 33 at 2, 6 (never suggesting a conflict).) The Court engages in a more detailed choice-of-laws analysis with regard to Plaintiff's other claims.

### C.     Breach of Contract

A party alleging breach of contract under Washington law must show the existence of a valid contract, a breach of that contract, and resulting damages. *See Wells Fargo Bank v. Genung*, No. C13-0703-JLR, 2013 WL 6061592 at *3 (W.D. Wash. 2013). The Court concludes that Plaintiff has established these elements for purposes of surviving a motion to dismiss.

The Complaint alleges that from 1985 until 2009, Lloyds Bank calculated the Cost of Funds in one manner, and that in 2009 Lloyds Bank changed the method to include the cost of funding Lloyds' Parent's overhead and operations. (Dkt. No. 1, Ex. A at ¶7.) Plaintiff argues that including the LTP charge breached the terms of the contract because the charge did not reflect the Bank's cost of funding the loans, but instead made Plaintiff responsible for covering costs attributable to Lloyds' Parent's operations as a whole. (*Id.*; Dkt. No. 30 at 10.) Plaintiff notes that at the same time that Lloyds Bank's Cost of Funds was ostensibly increasing, interest-rate indices such as LIBOR-USD were falling. (Dkt. No. 1, Ex. A ¶ 19.)

Defendant makes two arguments for why this breach-of-contract claim should fail. First, Defendant mischaracterizes Plaintiff's argument by suggesting that its success depends on whether the contract explicitly referred to the LIBOR index. (Dkt. No. 26 at 13–16.) Defendant devotes most of its time to this strawman argument. (*Id.* at 13–15; Dkt. No. 33 at 12.) But Plaintiff merely points to the LIBOR index as supporting evidence. (Dkt. No. 1, Ex. A ¶ 6.) This is not "forc[ing] LIBOR into the Cost of Funds definition," as Defendant suggests, but merely suggesting one reason to think that the increase did not reflect a cost properly attributable to Lloyds Bank. (Dkt. No. 33 at 12.)

Second, Defendant suggests that the contract's definition of the Cost of Funds allowed

them exclusive (and functionally limitless) authority to determine the interest rate. (Dkt. No. 26 at 15–16.) Although Defendant argues that Plaintiff's definition of the Cost of Funds is "restrictive," Defendant provides no basis for thinking this is so: Defendant never addresses the circumstances under which the LTP charge was included as part of the Cost of Funds and provides no explanation for how the LTP charge affected the Cost of Funds. (Dkt. Nos. 26 at 16, 33 at 12.) By the reasoning in Defendant's briefing, the contract imposed no limitation on Defendant's ability to set an interest rate other than Defendant's own creativity in imagining costs to designate as part of its "Cost of Funds." At this time, the Court does not determine—and lacks the information to determine—whether the LTP charge was indeed an appropriate component of Defendant's Cost of Funds. However, Plaintiff's allegations sufficiently demonstrate that incorporating the LTP charge in 2009 plausibly breached the contract by requiring Plaintiff to bear the cost of a charge that was not part of Defendant's Cost of Funds. The Court therefore DENIES Defendant's motion to dismiss these claims.

### D.     Implied Covenant of Good Faith and Fair Dealing

Washington law recognizes a cause of action for breach of the implied duty of good faith and fair dealing. *See Putz v. Golden*, 847 F.Supp.2d 1273, 1286 (W.D. Wash. 2012). Hong Kong law recognizes no similarly broad implied covenant of good faith. *See, e.g.*, *Pacific Long Distance Telephone Corp. Ltd. v. New World Telecomm. Ltd.*, [2012] HCA 1688/2006 § 40 (implication of a term limiting discretion was not an application of a good-faith doctrine); *Greenclose Ltd. v. National Westminster Bank*, [2014] EQHC 1156 (Ch) (14 Apr. 2014) § 150 (English common law recognizes "no general doctrine of good faith"). However, after careful consideration of the cases upon which the parties rely, the Court concludes that in these circumstances Hong Kong law would imply a term limiting Defendant's contractual exercise of discretion in the same way that the implied duty of good faith limits the exercise of contract terms granting one party discretion. *See Putz*, 847 F.Supp.2d at 1286 (duty of good faith "exists only in relation to performance of a specific term"); *Rekhter v. State of Washington*, 323 P.3d

1036, 1042 (Wash. 2014) ("[W]hen a party has discretion over a future contract term, it has an implied duty of good faith and fair dealing in setting and performing that contractual term."). Because there is no conflict between the two jurisdictions, the Court concludes that Washington law applies and that the breach-of-implied-covenant claim survives a motion to dismiss.

Under Hong Kong law, whether to imply a good-faith term limiting a contracting party's exercise of discretion is heavily context-dependent. *See Pacific Long Distance Tele. Corp. Ltd. v. New World Commc'ns Ltd.*, [2012] HCA 1688/2006 § 38 ("Whether a term constraining the exercise of that discretion is to be implied depends upon the relevant factual circumstances."); *Greenclose*, [2014] EQHC 1156 § 150 ("[C]ontext is vital."). In *Pacific Long*, a Hong Kong court implied a term limiting a party's discretion in a situation very similar to that at issue here. In that case, a contract term allowed a company to "revise the Agreement and/or introduce additional terms and conditions from time to time," and provided that any revision would be effective when the customer had notice of it. *See id.* § 32. The company relied on the breadth of this term in justifying its decision to dramatically increase rates. *See id.* §§ 32–33. The Hong Kong court, however, rejected the company's interpretation of the contract. The court discussed contexts in which other courts had implied terms limiting one party's discretion, *see id.* §§ 39–42, and ultimately concluded that the defendant had breached "an implied term that the rights set out in that clause should be exercised on a commercial footing, reflecting market rates for the provision of such services, but not for any collateral purpose." *Id.* § 48. In other words, even though the contract contained no explicit limit on the company's discretion to set rates, the court implied such a limit based on the circumstances. *Cf. Rekhter*, 323 P.3d at 1041 ("[G]ood faith *limits* the authority of a party retaining discretion to interpret contract terms . . . ." (internal quotation marks omitted).)

English common law—which Hong Kong follows—also supports implying a term limiting Defendant's exercise of discretion in these circumstances. (Dkt. No. 30 at 17–18; Dkt. No. 33 at 11 (both parties cite and recognize relevance of English common law).) In one case

cited in *Pacific Long*, an English court read into agreements "an implied term . . . [that the party] would not set rates of interest unreasonably in [a] limited sense." *Paragon Finance plc v. Nash*, [2002] 1WLR 685 ¶ 42. Another more-recent English case contains a thorough and thoughtful discussion of the good-faith doctrine in English common law and recognized "well established" authority that "a power conferred by a contract on one party to make decisions which affect them both must be exercised honestly and in good faith for the purpose for which it was conferred, and must not be exercised arbitrarily, capriciously or unreasonably (in the sense of irrationally)." *Yam Seng Pte Ltd. v. International Trade Corp. Ltd.* [2013] EWHC 111 (QB) § 145 (citing cases).

The Court therefore concludes that Hong Kong and Washington law both provide that a party may breach an implied term of a contract by abusing a contractual grant of discretion in circumstances such as those described here. The law of neither jurisdiction provides a "free-floating duty of good faith." *Putz*, 847 F.Supp.2d at 1286. Yet neither jurisdiction's law supports Defendant's argument that a clause granting it discretion may be exercised completely free of consideration for the parties' expectations and the commercial realities of the situation. *See Rekhter*, 323 P.3d at 1042. The scope of the implied term may differ between jurisdictions, but on this motion to dismiss the only question is whether Plaintiff has plausibly alleged an entitlement to relief. *See Iqbal*, 556 U.S. at 678. Because both Hong Kong law and Washington law support the implication of a good-faith-like term limiting Defendant's discretion in the circumstances here, there is no conflict and the Court applies Washington law. Just as the Court concluded that Plaintiff has plausibly alleged a breach of contract, the Court concludes that Plaintiff's breach-of-the-implied-covenant-of-good-faith claim survives this motion to dismiss.

E.   **Consumer Protection Act Claim**

Under Washington law, "a choice of law provision in a contract does not govern tort claims arising out of the contract." *Haberman v. Washington Pub. Power Supply Sys.*, 744 P.2d 1032, 1066 (1987). "To determine whether the parties intended the choice-of-law clause to cover

ORDER
PAGE - 7

the tort and CPA claims, the Court must focus on the objective manifestations of their agreement—i.e., 'the actual words used'—rather than on the unexpressed subjective intent of the parties." *Carideo v. Dell, Inc.*, 706 F. Supp.2d 1122, 1127 (W.D. Wash. 2010) (citing *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (2005)). In other words, the Court must look to the terms of the contract to determine whether the parties meant for Hong Kong law to apply to the CPA claims.

Here, the choice-of-law provision designates that Hong Kong law shall govern the "transaction." The "transaction" is a broad term that the Court concludes demonstrates an intent for Hong Kong law to apply throughout the course of the contract's implementation. *See, e.g. In re Enron Creditors Recovery Corp.*, 422 B.R. 423, 436 (S.D.N.Y 2009) (recognizing broad definition for the word "transaction"); *cf. Carideo*, 706 F.Supp.2d at 1127–28 (provision governing "this agreement and any sales thereunder" did not apply to bad acts leading up to the sales, particularly when other provisions in the contract explicitly encompassed potential tort claims). The CPA claim is premised on allegedly deceptive contract language and Defendant's allegedly deceptive acts in exercising its discretion under that contract; that claim relates inextricably to the implementation of the contract. Accordingly, the Court concludes that the choice of Hong Kong law is effective. Having concluded that Hong Kong law applies, the Court follows the detailed reasoning of other courts that concluded that Hong Kong law precludes the assertion of foreign statutory claims. *See Dugan v. Lloyds TSB Bank, PLC*, No. 12-2549-WHA, 2014 WL 1647691 at *4–*5  (N.D. Cal., Apr. 24, 2014); *Willcox v. Lloyds TSB Bank, plc*, No. 13-0508-ACK (D. Haw., June 10, 2014) (Dkt. No. 36 at 37–49). The Court GRANTS Defendant's motion to dismiss the CPA claim.

F.     Case Schedule

The parties are directed to submit a stipulated case schedule establishing class-certification briefing deadlines by August 8, 2014.

ORDER
PAGE - 8

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 26) is GRANTED IN PART.

DATED this 18th day of July 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE